NO. 07-08-0070-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A 

FEBRUARY 27, 2009

______________________________

KODY AND JANET KOTHMANN AND 

KODY KOTHMANN, TRUSTEE, APPELLANTS

V.

GENESIS TAX LOAN SERVICES, INC. AND M. SUZANNE FROSSARD, 

SUBSTITUTE TRUSTEE, APPELLEES

_________________________________

FROM THE 72
ND
 DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-535,294; HONORABLE RUBEN REYES, JUDGE PRESIDING_______________________________

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

OPINION

Appellants, Kody and Janet Kothmann and Kody Kothmann, Trustee of the Kody Kothmann Irrevocable Trust, (collectively Kothmann) appeal from a judgment rendered in favor of Appellees, Genesis Tax Loan Services, Inc. and M. Suzanne Frossard, Substitute Trustee, following a bench trial of Kothmann’s declaratory judgment action seeking to establish the enforceability of four deeds of trust held by Genesis and further seeking to enjoin Frossard from conducting a trustee’s sale pursuant thereto.  Kothmann asserts the trial court erred (1) in permitting Genesis to present evidence regarding tax liens; (2) in its determination that Genesis holds valid transferred tax liens; and (3) by finding that Genesis’s liens are superior to Kothmann’s liens.  We affirm in part, reverse and render in part, and reverse and remand in part.

Background

This appeal involves the priority of competing liens encumbering four separate parcels of real property situated in various additions to the City of Lubbock, Lubbock County, Texas.
(footnote: 1)  (*See additional comment in Footnote 1).  As to each parcel, Genesis holds a deed of trust which purports to secure the repayment of 2003 property taxes paid on behalf of the property owned by Genesis pursuant to sections 32.06 and 32.065 of the Texas Tax Code.
(footnote: 2)  Kothmann maintains that each parcel is encumbered by a prior deed of trust lien which is “superior” to the Genesis lien.  When Genesis attempted to foreclose on its deeds of trust, Kothmann filed its original petition seeking a declaratory judgment that the attempted foreclosure of each deed of trust was “ineffective because the Genesis lien has been cut off by the foreclosure of a superior lien.”  Kothmann further requested a temporary restraining order and permanent injunction enjoining Genesis from conducting  foreclosure sales pursuant to those deeds of trust.  In its petition, Kothmann alleged that each Genesis deed of trust was executed and filed of record subsequent to Kothmann’s deeds of trust on the same property.  Specifically, Kothmann alleged that, “in each instance, [Kothmann]’s lien and deed of trust is prior in time and superior to the deed of trust benefitting Genesis.”  Genesis responded with a general denial stating “[d]efendants deny each and every allegation of Plaintiffs’ Original Petition, and demand strict proof as required by the Texas Rules of Civil Procedure.”   

On Friday, June 2, 2006, the trial court
(footnote: 3) granted an ex parte 
Temporary Restraining Order
 commanding Appellees to desist and refrain from holding the trustee’s sale which was then scheduled for Tuesday, June 6.  On June 16
, the trial court entered an 
Order Granting Temporary Injunction
 “extending” the restraining order until further order of the Court.  On April 5, 2007, a bench trial was held with the Honorable J. Blair Cherry presiding by assignment.  

At trial, Kothmann produced notices from Genesis, dated May 16, 2006, giving Kothmann notice of a pending  foreclosure sale of each parcel pursuant to Genesis’s deeds of trust, which were each dated May 27, 2004. For each parcel, Kothmann produced a warranty deed with vendor’s lien and a deed of trust entered into between Kothmann and Gary Morgan, which predated Genesis’s deeds of trust, both as to execution and filing.  As to Tracts 1 and 2, Kothmann further produced a substitute trustee’s deed reflecting foreclosure of those earlier dated deeds of trust.  As to Tracts 3 and 4, Kothmann produced a substitute trustee’s deed reflecting foreclosure of another deed of trust which was executed and filed subsequent to the execution and filing of Genesis’s deed of trust.  Finally, Kothmann offered testimony that his 
attorney’s fees and costs thus far in the litigation were established at $9,361.00 and $488.82, respectively. 

At the conclusion of Kothmann’s case-in-chief, Genesis moved for judgment based upon its status as the transferee of a tax lien on each of the four properties pursuant to § 32.06 and the priority granted to such a transferee under § 32.05.  Kothmann objected to any argument or testimony regarding Genesis’s asserted status as a tax lien transferee because Genesis had filed only a general denial, thereby failing to assert its tax lien status as an affirmative defense pursuant to Rule 94 of the Texas Rules of Civil Procedure.
(footnote: 4)  Genesis responded that Kothmann had the burden of disproving its asserted status.  The trial court denied Genesis’s motion for judgment and took the evidentiary ruling under advisement.  

Subject to Kothmann’s pending evidentiary objection, the trial court permitted Genesis to present evidence pertaining to its status as a tax lien transferee.  As to each parcel, Genesis introduced a deed of trust, dated May 27, 2004, entered into between Genesis and the property owner.  Genesis’s deeds of trust contained boilerplate legends at the bottom of the first page of each document stating that the deed of trust was a transfer tax lien.  Genesis also introduced further documentary evidence and testimony in support of its alleged status as a tax lien transferee.
(footnote: 5)  

At the close of its evidence, Genesis moved for a directed verdict.  Kothmann again argued Genesis had failed to comply with all statutory elements necessary to obtain status as the holder of a transferred tax lien and re-urged his prior objection that no active pleading supported Genesis’s presentation of evidence regarding the transfer of any tax lien.  Genesis contended that its filing of the affidavit concerning the loss of the original tax collector’s certification of transfer of tax lien was sufficient to establish its status as a tax lien transferee.  
In addition, Genesis argued that the substitute trustee’s deed produced by Kothmann with respect to Tracts 3 and 4 reflected the foreclosure of a deed of trust that was recorded subsequent to Genesis’s deeds of trust on the same property.  Kothmann responded that Genesis had failed to submit evidence of the fact of any subsequent sale of the tracts 
or the release of Kothmann’s prior deeds of trust dated and filed in February 2002.  At the conclusion of the hearing, the trial court took the matter under advisement, while asking for additional briefing on the evidentiary issue.   

Four months later, on August 17, 2007, the trial court entered a judgment wherein it sustained Kothmann’s evidentiary objection and, without directly addressing Kothmann’s prayer for declaratory relief, permanently enjoined Genesis from foreclosing its deeds of trust related to the four properties.  On September 17, Genesis moved to have that judgment set aside and for entry of judgment in favor of Genesis or, in the alternative, for a new trial.  Kothmann responded and, on November 7, the trial court withdrew its prior judgment and entered a new judgment, this time finding that: (1) Genesis’s general denial was sufficient to raise the issue of its status as the transferee of a valid tax lien, (2) Genesis possessed transferred tax liens on the four properties that were “superior” to Kothmann’s liens, (3) denying Kothmann’s request for a declaratory judgment, (4) denying Kothmann’s request for a permanent injunction, and (5) ordering that Kothmann take nothing by the suit.  

At Kothmann’s request, the trial court entered findings of fact and conclusions of law.  In its 
Findings of Fact
, the trial court found that, as to each parcel:  (1) Kothmann held a deed of trust dated February 1, 2002,
(footnote: 6) (2) Genesis held a transferred tax lien dated May 27, 2004, and (3) Kothmann 
timely
 objected, under Rule 94 of the Texas Rules of Civil Procedure, 
 to Genesis’s offer of evidence pertaining to the transferred tax liens
.
  In its
 Conclusions of Law
, the trial court overruled Kothmann’s Rule 94 objection and determined that Genesis’s evidence relating to the transfer of tax liens was properly admitted.  The Court further held that, as to each parcel, Genesis held a “valid tax transfer lien” (without specificity as to the source or date of that lien);
(footnote: 7) 
Genesis’s liens were superior to Kothmann’s liens; and Genesis was entitled to judgment.  Thereafter, Kothmann timely appealed the November 7 judgment.
(footnote: 8)
Discussion

Issue One – Admission of Evidence Pertaining to Lien Priority

Kothmann asserts the trial court improperly admitted Genesis’s evidence of tax transfer lien status because Genesis failed to plead tax transfer lien status as an affirmative defense in its answer.  Genesis contends that, because this is a declaratory judgment proceeding in which the priority and superiority of competing liens was at issue, its assertion of lien priority was not an affirmative defense. 

I. Standard of Review

We review a trial court’s evidentiary rulings for abuse of discretion.  
Horizon/CMS Healthcare Corp. v. Auld
, 34 S.W.3d 887, 906 (Tex. 2000).  A trial court abuses its discretion when it rules without regard for any guiding rules or principles; 
Owens-Corning Fiberglas Corp. v. Malone
, 972 S.W.2d 35, 43 (Tex. 1998), or acts in an unreasonable or arbitrary manner.  
Hur v. City of Mesquite
, 893 S.W.2d 227, 234 (Tex.App.–Amarillo 1995, writ denied).  We must uphold a trial court’s evidentiary ruling if there is any legitimate basis for the ruling.
 Owens-Corning, 
972 S.W.2d at 43. 

II. Affirmative Defenses

Rule 94 requires affirmative pleading of enumerated defenses and “any other matter constituting an avoidance or affirmative defense.”
(footnote: 9)  Tex. R. Civ. P. 94.  An affirmative defense is a denial of the plaintiff’s right to judgment even if the plaintiff establishes every allegation in its pleadings.  
Walzier v. Newton
, 27 S.W.3d 561, 563 (Tex.App.–Amarillo 2000, no pet.); 
Highway Contractors, Inc. v. West Texas Equipment Co., Inc.
, 617 S.W.2d 791, 794 (Tex.Civ.App.–Amarillo 1981, no writ).  Its pleading is necessary because a general denial is only a negative plea that puts in issue the allegations a plaintiff is required to prove.  
France v. American Indem. Co., 
648 S.W.2d 283, 285 (Tex. 1983); 
Borders v. KRLB, Inc.
, 727 S.W.2d 357, 360 (Tex.App.–Amarillo 1987, writ ref’d n.r.e.).  

By pleading an affirmative defense, the defendant is allowed to introduce evidence to establish an independent reason why the plaintiff should not prevail.  
Gorman v. Life Ins. Co. of North America
, 811 S.W.2d 542, 546 (Tex. 1991);  
Walzier,
 27 S.W.3d at 563.  An affirmative defense does not rebut the factual propositions of the plaintiff’s pleading.  
Id.  
As a practical matter, Rule 94 is designed to encompass the situation where a plaintiff cannot recover even if his claims are true because of some other fact that the defendant has pled as a bar.  
Borders
, 727 S.W.2d at 360.  “In short, an affirmative defense is one of avoidance, rather than a defense of denial.”  
Gorman
, 811 S.W.2d at 546; 
Pulley v. Milberger
, 198 S.W.3d 418, 425 (Tex.App.–Dallas 2006, pet. denied). 

The party asserting an affirmative defense bears the burden of pleading and proving its elements; 
Quantum Chemical Corp. v. Toennies, 
47 S.W.3d 473, 481 (Tex. 2001); 
Compass Bank v. MFP Financial Services, Inc.
, 152 S.W.3d 844, 851 (Tex.App.–Dallas 2005, pet. denied)
, and, a
bsent trial by consent,
(footnote: 10) filing a general denial or failing to plead a matter of affirmative defense will constitute waiver of that defense.  
Bracton Corp. v. Evans Constr. Co., 
784 
S.W.2d 708, 710 (Tex.App.–Houston [14
th
 Dist.] 1990, no writ).  Moreover, if the affirmative defense is not pled, the trial court has no authority to make a finding of fact on the issue.  
Compass Bank
, 152 S.W.3d at 851. 

To establish a 
prima facie 
case of lien superiority, as to each parcel, 
Kothmann was required to plead and prove the filing and recordation of a valid lien that was prior in time to Genesis’s lien.
(footnote: 11)   As to each parcel, Kothmann introduced a deed of trust executed and filed prior to the execution and filing of the deed of trust through which Genesis asserted its deed of trust lien.
  Accordingly, at the end of its case-in-chief, Kothmann had established a 
prima facie 
case of entitlement to an affirmative ruling on the issue of lien priority.

       Because it had filed a general denial, Genesis then had the burden of going forward with evidence rebutting Kothmann’s 
prima facie 
case.  
However, rather than rebut the evidence underlying Kothmann’s 
prima facie 
case, Genesis sought to 
avoid
 Kothmann’s evidence by establishing a statutory exception or independent reason why Kothmann should not prevail, 
i.e.,
 that Genesis held a valid transfer tax lien as to each parcel.
(footnote: 12)  
As such, Genesis attempted to assert an affirmative defense at trial that had been waived by the filing of a general denial. 

Genesis contends that its assertion of lien superiority due to its status as a tax lien transferee is not an affirmative defense.  We disagree.  “Whether a particular fact is a matter of avoidance or defense turns on the burden of proof.”  
Trevino v. Allstate Ins. Co.
, 651 S.W.2d 8, 13 (Tex.App.–Dallas 1983, writ ref’d n.r.e.).  The burden of proving a statutory exception rests on the party seeking the benefit from the exception.  
City of Houston v. Jones
, 679 S.W.2d 557, 559 (Tex.App.–Houston [14
th
 Dist.] 1995, no writ).  Typically, that party will have greater access to evidence establishing the statutory elements.    

Moreover, a recognized principle in determining the burden of proof is to place it on the party having the peculiar knowledge of the facts to be proved; 
Dessommes v. Dessommes, 
505 S.W.2d 673, 679 (Tex.Civ.App.–Dallas 1974, writ ref’d n.r.e.), and, as a general rule, it makes more sense to require a defending party to prove an affirmative act than to require a plaintiff to prove the negative.  See 
Cook Composites, Inc., 
15 S.W.3d at 137-38; 
City of Houston v. Crabb
, 905 S.W.2d 669, 674 (Tex.App.–Houston [14
th
 Dist.] 1995, no writ).  Here, Genesis sought to take advantage of a statutory exception to avoid Kothmann’s 
prima facie 
case.  Genesis had greater access to the facts necessary to establish the statutory exception and was proving an affirmative act.  As a result, Genesis bore the burden of proof as to that issue.
(footnote: 13)
 Genesis also asserts that tax lien transferee status is not an affirmative defense but an inferential rebuttal defense to a 
prima facie 
case of lien superiority.  An inferential rebuttal defense operates to rebut an essential element of the plaintiff’s case by the proof of other facts.  
Dew v. Crown Derrick Erectors, Inc., 
208 S.W.3d 448, 450 (Tex. 2006); 
Walzier
, 27 S.W.3d at 564.  Inferential rebuttal defenses are distinct from affirmative defenses in that an inferential rebuttal, as the name implies, rebuts part of the plaintiff’s cause of action, while an affirmative defense relieves the defendant of liability even if all the elements of a plaintiff’s cause of action are established.  
See Moulton v. Alamo Ambulance Serv.
, 414 S.W.2d 444, 448 (Tex. 1967); 
Buls v. Fuselier, 
55 S.W.3d 204, 211 (Tex.App.–Texarkana 2001, no pet.).

Here, if Genesis established tax lien transferee status, Genesis would defeat Kothmann’s claim to lien superiority even though Kothmann otherwise established a prior deed of trust lien.  Thus, Genesis’s assertion that tax lien transferee status is an inferential rebuttal issue purporting to negate an element of Kothmann’s cause of action is incorrect.  The defense interjects an independent basis for denying recovery 
even though 
Kothmann established a 
prima facie 
case. 

Accordingly, we find that the trial court abused its discretion by permitting Genesis to enter evidence at trial in support of any tax lien transferee status based upon a general denial and improperly entered judgment premised thereon.  
See 
Tex. R. Civ. P. 301 (“the judgment shall conform to the pleadings”); 
Hays Consol. Independent School Dist. v. Valero Transmission Co.
, 645 S.W.2d 542, 545-47 (Tex.App.–Austin 1982, writ ref’d n.r.e.).  Issue one is sustained.

Issues Two - Validity of Genesis’s Tax Lien

By his second issue Kothmann asserts that, even if the evidence was properly admitted, the trial court erred in finding that Genesis’s liens were valid
 as tax transfer liens because Genesis failed to comply with statutory requirements for attaining tax transfer lien status.  We agree.

I. Transfer of Tax Liens

On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on that property in favor of each taxing unit having the power to tax the property.  Texas Tax Code Ann. § 32.01(a)(Vernon 2008).  An owner of property may authorize another person (the “transferee”) to pay the delinquent taxes imposed by a taxing unit on that person’s property.  § 32.06(a-1).
(footnote: 14)  When the transferee pays the taxes, the tax collector issues a tax receipt to the transferee.  § 32.06(b).  In addition, the tax collector is required to issue a sworn statement (which may be combined with the tax receipt) which certifies that, as to the subject property, the taxes, penalties, interest, and collection fees have been paid by the transferee on behalf of the property owner and that the taxing unit’s tax lien is transferred to the transferee.  
Id.
  The transferee of a tax lien is entitled to enforce foreclosure of that lien in either of two ways: (1) in the manner provided by law for foreclosure of tax liens; or (2) in the manner specified in § 51.002 of the Texas Property Code, and § 32.065 of the Texas Tax Code, through the non-judicial foreclosure of a deed of trust.  § 32.06(c)(1) and (2).

In 2004, § 32.06(d)
(footnote: 15) expressly provided as follows:

(d)  
To be enforceable
, a tax lien transferred as provided by this section 
must be recorded
 with the sworn statement and affidavit attesting to the transfer of tax lien as described in Subsection (b)
 
in the deed records of each county in which the property encumbered by the lien is located.

(Emphasis added).  
See ABN Amro Mortgage Group v. TCB Farm and Ranch Land Investments, 
200 S.W.3d 774 (Tex.App.–Fort Worth 2006, no pet.).   

Genesis contends that, as to each parcel, it complied with the statutory requirements of § 32.06(b) for transfer of the tax lien for the 2003 tax year.  Genesis further contends that it complied with the statutory requirements of § 32.06(c)(2) for the non-judicial foreclosure of its deed of trust.
  Kothmann contends that Genesis failed to comply with the statutory requirements in several respects.  In particular, Kothmann contends Genesis did not record the sworn statement and affidavit attesting 
to the transfer of the tax lien in the deed records in and for Lubbock County, as required by § 32.06(d).  In response, Genesis contends that it substantially complied with the statutory requirements by filing a document, as to each parcel, entitled 
Affidavit of Any Fact, 
which document, dated December 3, 2004, and recorded December 9, recites in relevant part, 
as follows:

On or about July 1, 2004, Genesis Tax Loan Services, Inc. deposited the envelope containing [the tax transfer statement] in the United States Mail in a postage prepaid envelope to the Lubbock County Clerk, ATTN: Deed Records, 904 Broadway, Room 207, Lubbock, TX 79408.  Also enclosed in the envelope was a check in the proper amount, made payable to Doris Ruff, Lubbock County Clerk, for recording fees from Genesis Tax Loan Services, Inc.

Said document containing the Affidavits Authorizing the Transfer of a Tax Lien has either been lost in the mail or lost in the Lubbock County Courthouse building.

This Affidavit is made for the sole purpose of giving notice to the public that the document containing the Affidavit Authorizing the Transfer of a Lien, attached hereto as Exhibit “A”, is a true and correct copy of, along with the best evidence of, the authorization by both the Borrower and the Lubbock County Tax Collector of the transfer of the ad valorum (sic) taxes under 32.06 of the Texas Tax Code to Genesis Tax Loan Services, Inc.

Therefore, the issue before this Court is, does this affidavit, together with the attached copy of the tax collector’s certification of transfer of the tax lien, sufficiently comply with § 32.06(d) to create an enforceable transfer of the 2003 tax lien?  To the knowledge of this Court, there are no appellate decisions that have heretofore answered this question.  We must, therefore, look elsewhere for guidance.

II. Code Construction Act

We begin the interpretation of any statute by reference to the Texas Code Construction Act. Tex. Govt. Code Ann. §§ 311.001-.034 (Vernon 2005).  In 2004, when Genesis filed its deed of trust and affidavit seeking to effectuate a transfer of the tax lien securing payment of the 2003 taxes, § 32.06(d) expressly provided that, in order to be enforceable, the transferred tax lien and the sworn statement and affidavit attesting to the transfer, “must be recorded” in the deed records of the county where the property was located.  Pursuant to the Code Construction Act, unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute, use of the term “must” creates or recognizes a condition precedent.  § 311.016(3)
.

An analysis of § 32.06(d), as it existed at the time of the attempted transfer of the 2003 tax lien, clearly establishes that recordation of the tax collector’s sworn statement and affidavit were conditions precedent to the 
enforceability
 of the lien.  Although we know that Genesis did not record the original tax collector’s sworn statement and affidavit, our inquiry does not stop there.  We must go one step further and determine whether the recordation of a copy is a sufficient substitute for recordation of the original.  For that answer, we must delve deeper. 

II. Records and Recording Laws

Recording laws are statutes requiring or permitting the recording of instruments affecting title to real property for the primary purpose of giving notice of their contents to the public.    
Grumbles v. Sneed
, 22 Tex. 565, 1858 WL 5678, *8 (1858); 64 Tex.Jur.3d 
Records and Recording Laws 
§ 19 (2003). Generally, recording laws are to be strictly construed.  
Adams v. Hayden, 
60 Tex. 223, 1883 WL 9307, *3 (1883); 64 Tex.Jur.3d 
Records and Recording Laws 
§ 18 (2003).  One of the primary purposes of recording documents affecting the title to real property is to make information pertaining to that property available to the general public and thus to protect persons from fraud.  Because an underlying policy of recording documents is to prevent fraud, an affidavit that the affiant once had possession of a deed and that it has been lost is not recordable.  
White v. McCullough,
 120 S.W. 1093, 1098 (Tex.Civ.App.–Texarkana 1909, no writ).

III. Lost Documents

To address the inevitable situation where a document affecting title to real property is lost or destroyed before being duly recorded, the Legislature has provided a remedy.  Chapter 19 of the Texas Civil Practice and Remedies Code sets forth the procedure whereby a person may judicially supply parol proof of a lost record.  Tex. Civ. Prac. & Rem. Code Ann. § 19.002 
(Vernon 2008).  This procedure specifically applies to any “conveyance that is required or permitted by law to be acknowledged or recorded and that has been acknowledged or recorded.”  § 19.001
.  
The procedure requires the issuance of citation to interested parties and service of process in the manner provided by law for civil cases.  § 19.004
.  Upon hearing, if the court is satisfied from the evidence of the previous existence and content of the record and of its loss, the court shall enter an order containing its findings and a description of its contents, which order may then be recorded, in lieu of the original, in the proper county.  § 19.005
.   The recorded order then has the same effect as the original record.  § 19.006
.  Genesis did not avail itself of this procedure.

IV. Other Methods of Supplying a Lost Record

In addition to the procedure provided by Chapter 19 of the Texas Civil Practice and Remedies Code, we find nothing in the applicable provisions of the Tax Code that would prevent Genesis from requesting and filing a duplicate sworn statement and affidavit from the tax collector.  Genesis did not avail itself of this procedure either.
 

V. Conclusion

Strictly construing the provisions of § 32.06(d), we find that Genesis failed to file the original document
s necessary to effectuate a transfer of the tax lien.  Furthermore, Genesis did not avail itself of the remedy provided by Chapter 19 of the Texas Civil Practice and Remedies Code, nor did it attempt to obtain and file a duplicate original.  Under the record before us, as to each parcel at issue, we find that Genesis has yet to effectively transfer an enforceable tax lien.  Whether or not Genesis’s deed of trust creates a contractual (non-tax) lien is not the issue before us and we specifically express no opinion on that issue at this time.  Issue Two is sustained.

Issue Three - “Superiority” of Genesis’s Liens

Finally, Kothmann asserts the trial court erred in finding Genesis’s liens were “superior” to Kothmann’s liens.  Again, we agree with the position being taken by Kothmann.

The Texas Constitution classifies a tax lien as an inextinguishable “special lien” which must be paid to the sovereign taxing entity.  Tex. Const. art. VIII, § 15; 
See Enell Corp. v. Longoria,
 834S.W.2d 132, 134 (Tex.App.–San Antonio 1992, writ denied).  Furthermore, the principle of lien priority based upon time of filing does not apply to a tax lien.  
ABN Amro Mortgage Group, 
200 S.W.3d at 779.  
Except as provided by subsection (c)(1) of section 32.05 of the Texas Tax Code, a provision not implicated by the facts of this case, a tax lien on real property takes “priority” over the claim of any creditor of a person whose property is encumbered by that tax lien. § 32.05(b)(1).  
Therefore, subject to those exceptions, a valid tax lien for 
ad valorem 
taxes is always senior to and has priority over other liens, regardless of when that lien is filed. 
 
ABN Amro Mortgage Group, 
200 S.W.3d at 779.
 

As discussed hereinabove, Genesis failed to effectively transfer the tax lien securing the 2003 
ad valorem 
taxes.  Therefore, Genesis’s liens are not entitled to any special lien status.  As to each parcel, because the lien created by the Kothmann deed of trust was filed prior to the deed of trust filed by Genesis, Kothmann’s deed of trust lien is senior to and has priority over the lien, if any, created by the filing of Genesis’s deed of trust.  Issue three is sustained.

Conclusion

Kothmann does not appeal the denial of a permanent injunction.  Therefore, we affirm that part of the trial court’s judgment denying injunctive relief.  As to that part of the trial court’s judgment rendering declaratory relief, we reverse
 the judgment of the trial court and render declaratory judgment in favor of Kothmann, as follows:

(1) As to Lot No. 235, Oak Park Addition to the City of Lubbock, Lubbock County, Texas, Kothmann’s deed of trust recorded in Volume 6973, Page 98 of the Real Property Records of Lubbock County, Texas, is senior to and has priority over Genesis’s deed of trust recorded in Volume 9196, Page 271 of the Real Property Records of Lubbock County, Texas.

(2) As to Lot No. 242, Oak Park Addition to the City of Lubbock, Lubbock County, Texas, Kothmann’s deed of trust recorded in Volume 7481, Page 270 of the Real Property Records of Lubbock County, Texas, is senior to and has priority over Genesis’s deed of trust recorded in Volume 9196, Page 283 of the Real Property Records of Lubbock County, Texas.

(3) As to Lot No. 6, Taylor-Jackson Addition to the City of Lubbock, Lubbock County, Texas, Kothmann’s deed of trust recorded in Volume 7481, Page 276 of the Real Property Records of Lubbock County, Texas, is senior to and has priority over Genesis’s deed of trust recorded in Volume 9196, Page 279 of the Real Property Records of Lubbock County, Texas.

(4) As to Lot No. 18, Sportsman Addition to the City of Lubbock, Lubbock County, Texas, Kothmann’s deed of trust recorded in Volume 7481, Page 282 of the Real Property Records of Lubbock County, Texas, is senior to and has priority over Genesis’s deed of trust recorded in Volume 9196, Page 275 of the Real Property Records of Lubbock County, Texas.
(footnote: 16)

(5) All other declaratory relief is denied.

Furthermore, we 
remand the issue of attorney’s fees to the trial court for further proceedings under section 37.009 of the Texas Civil Practice and Remedies Code.  
See Hartsell v. Town of Talty, 
139 S.W.3d 325, 329 (Tex.App.–Dallas 2004, pet. denied).    

Patrick A. Pirtle

      Justice

FOOTNOTES
1: 
For convenience, unless otherwise specified, each parcel will be referred to by the following tract number: 

Tract 1: Lot No. 235, Oak Park Addition (residentially known as 8102 Ave. U.); 

Tract 2: Lot No. 242, Oak Park Addition (residentially known as 7814 Ave. U.); 

Tract 3: Lot No. 6, Taylor-Jackson Addition (residentially known as 1911 41
st
); and 

Tract 4: Lot No. 18, Sportsman Addition (residentially known as 7206 Ave. W.).*  

*Although Plaintiff’s Original Petition and both Judgments  identified Tract 4 as Lot No.
 
8, Sportsman Addition to the City of Lubbock, Lubbock County, Texas, the warranty deed from Kothmann to Morgan(P-4B), and the deed of trust from Morgan in favor of Kothmann (P-4C), identify the tract as Lot No. 18
.
  The deed of trust from Morgan in favor of Genesis (D-7) and the affidavit proffered by Genesis in support of its claimed tax lien (D-8), both identify the tract as Lot No.
 
8
.
 From the record before us, we express no opinion as to the correct legal description of the property residentially known as 7206 Ave. W., Lubbock, Texas. 

2:
Tex. Tax Code Ann. (Vernon 2008).  For convenience, unless otherwise specified, references to “Section ___” or “§ ___”
 are references to the Texas Tax Code. 

3:
The Honorable Jim Bob Darnell acting for and in the absence of the Honorable Ruben G. Reyes, Judge Presiding.

4:
Tex. R. Civ. P. 94 states, in pertinent part, as follows:

In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction . . . and any other matter constituting an avoidance or affirmative defense.

5:
Genesis called Epi Aquirre, Information Services Collection Manager for the Lubbock Central Appraisal District, to testify to the statutory elements and procedure for obtaining a transfer tax lien, steps taken by Genesis to meet the requirements and documents Genesis filed to comply with the statutory elements, 
i.e.
, certified affidavits, tax receipts, affidavits authorizing the tax lien’s transfer, tax collector’s certification, and other evidence.

6:
As to Tract 1, the trial court finding that Kothmann held a deed of trust dated February 1, 2002, is not supported by the evidence.  Instead, the evidence supports a finding that Kothmann’s deed of trust was  actually dated and filed on February 15, 2001. 

7:
Neither the Findings of Fact, nor the Conclusions of Law clearly specify whether the “lien” was the result of a transfer of tax lien pursuant to § 32.06(b) or a deed of trust lien pursuant to § 32.065.  The deeds of trust were dated May 27, 2004; however, the copy of the tax collector’s certifications of tax lien transfer  reflect that they were acknowledged on June 15, 2004.

8:
Although there are two judgments in the record, the judgment dated November 7, 2007, references the first judgment and “withdraws” the prior judgment.  As such, the original judgment is “effectively ‘dead’” and appeal was properly taken on the later judgment.  
See Ferguson v. Naylor, 
860 S.W.2d 123, 127 (Tex.App.–Amarillo 1993, writ denied).     

9:
The listing of affirmative defenses listed in Rule 94 is not exclusive.  
Phillips v. Phillips
, 820 S.W.2d 785, 789 (Tex. 1991).

10:
An exception to the general rule that an affirmative defenses is waived if not pleaded arises if the other party anticipates defensive matters and sets them forth in its own pleadings.  
See Phillips, 
820 S.W.2d at 789.  Genesis does not assert this exception applies in the context of this case.  Neither does Genesis assert that any issue regarding transfer tax liens was tried by consent.  

11:
The most basic principle employed in the adjudication of the priority of competing liens is “the first in time is the first in right.”  
See World Help v. Leisure Lifestyles, Inc
., 977 S.W.2d 662, 668 (Tex.App.–Fort Worth 1998, pet. denied); 
Windham v. Citizens Nat. Bank
, 105 S.W.2d 348, 351 (Tex.Civ.App.–Austin 1937, writ dism’d).  Regarding lien priority, the United States Supreme Court has observed that:

The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a Court of law or equity to a subsequent claimant. 

Rankin v. Scott, 
25 U.S. 177, 179, 12 Wheat. 177, 6 L.Ed. 592 (1827).

12:
As more fully discussed below, at minimum, in order to establish an enforceable transfer tax lien pursuant to section 32.06(b) and (d), a party must establish that: (1) the property owner authorized another person 
to pay their delinquent taxes on real property by filing a sworn affidavit authorizing the transfer, identifying the transferee and describing the property upon which the taxes were owing; (2) within 30 days, the transferee obtained a tax receipt and sworn affidavit from the tax collector certifying that the delinquent taxes, penalties, and collection costs were paid by the transferee and that the taxing unit’s lien was transferred to the transferee; and (3) record the transferred lien with the sworn statement and affidavit in each county which the property encumbered by the lien is located. 

13:
To hold otherwise would lead to an unreasonable result in every instance where a plaintiff seeks to establish lien priority over real property.  That is, not only would a plaintiff be required to establish the elements of their 
prima facie 
case of lien superiority but they would also have to anticipate that the defendant might assert tax lien transferee status and then attack the validity of such status in their case-in-chief in the absence of any affirmative pleading or showing by the defendant that the defense, in fact, is sought or applies.
 

14:
The text of subsection (a-1) was amended twice by the 80
th
 Legislature.  Once by Acts 2007, 80
th
 Leg., ch. 1220, § 3, and once by Acts 2007, 80
th
 Leg., ch. 1329, § 1.  The text of each subsection is slightly different.  To the extent that these two subsections impose different requirements for “authorization” to pay taxes on behalf of another, we find that the transferee must comply with all requirements set forth in either subsection.

15:
Subsection (d) was subsequently amended as follows:

(d)  A transferee shall record a tax lien transferred as provided by this section with the statement attesting to the transfer of the tax lien as described by Subsection (b) in the deed records of each county in which the property encumbered by the lien is located.

Act
 of May 25, 2007, 80
th
 Leg., R.S., ch. 1329, § 1 2007 Tex. Gen. Laws 4484.

16:
See
 comment contained in Footnote No. 1.